Rudy J. Bautista (8636)
Bautista, Overson, & Stewart, P.C.
299 South Main Street, Suite 1300
Salt Lake City, UT 84111
Telephone: (801) 232-5311
Fax No.: (801) 486-1377
Email: rudy@boslaw.com

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>vs.<br><br>RYAN RALICKE REED,<br><br>         Defendant. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**<br><br><br>Case No. 2:14-CR-062 TC<br><br>HONORABLE TENA CAMPBELL |

COMES NOW Defendant, Ryan Reed, by and through counsel of record, Rudy J. Bautista, and hereby submits the following memorandum, based upon the transcript of the suppression hearing that took place before this Court on November 12, 2014, and the continuation of such hearing on March 9, 2015. Mr. Reed argues that the traffic stop conducted by Sergeant Chamberlin Neff should be suppressed, along with all evidence garnered during the stop, where Sergeant Neff relied on unreasonable mistakes of fact in finding justification for the stop.

I.   THE TRAFFIC STOP SHOULD BE SUPPRESSED WHERE THE OBJECTIVELY REASONABLE FACTS DO NOT SUPPORT A LEGALLY JUSTIFIED STOP.

The Fourth Amendment of the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures." The Supreme Court has long held that the stop of an automobile constitutes a seizure, governed by the Fourth Amendment reasonableness requirement. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (stopping an automobile to check driver's license and registration without at least RAS is unreasonable under the Fourth Amendment).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996) (as long as stop legally justified, subjective intent of officers does not invalidate the stop). Further, "[a] traffic stop is justified at its inception if an office has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1133-34 (10th Cir. 2009) (subjective intent of officer in stopping vehicle for observed speeding not relevant for Fourth Amendment analysis).

> a. *The Government Should be Required to Show that Sergeant Neff Had Probable Cause to Justify the Stop.*

It stands to argue that moving violations require probable cause because as a general rule, the moving violations occur in the presence of the officer. This direct observation generates a higher level of suspicion than reasonable articulable suspicion. *See, e.g., State v. Lopez*, 873 P.2d 1127 (Utah 1994) ("An observed traffic violation gives the officer at the least, probable cause to believe the citizen has committed a traffic offense." (citation omitted)).

Where Sergeant Neff testified that he directly observed the traffic violation at issue, the Government should be required to show that Neff had probable cause to justify the stop. To hold otherwise would make the distinction outlined by the higher courts meaningless.  Why would a standard for a traffic violation require probable cause and a traffic regulation violation only

2

require reasonable articulable suspicion unless there is a distinction?

> b. *Under Either Probable Cause or Reasonable Suspicion, the Basis for the Stop is Invalid where Sergeant Neff's Mistakes of Fact Are Not Objectively Reasonable.*

"The *Terry* standard applies to our review of the reasonableness of a traffic stop 'regardless of whether the stop is based on probable cause or on some lesser suspicion.'" *Winder*, 557 F.3d at 1133 (citation omitted). Thus, the issue in this case is not limited to what legal standard applies to Sergeant Neff's suspicions, but whether those suspicions and the facts he based them on were objectively reasonable. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.").

Federal jurisprudence holds that, under limited circumstances, a "mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop." *U.S. v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) (convictions vacated due to mistake of law); *U.S. v. Tibbetts*, 396 F.3d 1132 (10th Cir. 2005) (remanded to determine if officer's mistake regarding mud flaps was mistake of fact or a mistake of law). But a mistake of fact may still render a stop illegal if the objective facts were not reasonable. *See U.S. v. Chanthasouxat*, 342 F.3d 1271, 1276-77 (11th Cir. 2003) ("if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable").  In this matter, Sergeant Neff's mistakes of facts were not reasonable.  Further, according to the Tenth Circuit, it is irrelevant to the inquiry of objective reasonableness if Sergeant Neff acted in "good faith." *See U.S. v. DeGasso*, 369 F.3d 1139, 1145 ("the district court's factual findings regarding pretext, subterfuge, and good faith suggests the court applied, at least in part, an improper subjective

standard to evaluate the legality of the initial stop").

> i. <u>Sergeant Neff's Visual Speed Estimation Was Not Objectively Reasonable.</u>

The Tenth Circuit has found that "an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (defendant did not challenge the reliability of the trooper's estimation, the visual estimation of speed was sufficient to support the stop). But there must additional indicia of reliability to support probable cause based on visual speed estimations. *See, e.g., United States v. Sowards*, 690 F.3d 583, 592 (4th Cir. 2012) ("the reasonableness of an officer's visual speed estimate depends, in the first instance, on whether a vehicle's speed is estimated to be in significant excess or slight excess of the legal speed limit. If slight, then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate."). In this matter, Sergeant Neff testified he estimated that the defendant was traveling at 5 miles per hour over the limit, which suggests that the estimation was only in slight excess of the legal speed limit.

In the instant case, expert testimony showed that Sergeant Neff relied on several mistakes of fact in arriving at the visual estimation of Mr. Reed's speed. First, Neff estimated Mr. Reed's speed based on the grossly overestimated distance between landmarks relating to the off-ramp at 7200 West. He was off by at least a tenth of a mile: his estimation of 2000 feet, which he claimed was a known distance and not an estimation, conflicts with the actual distance shown to be 1520 feet. 3/9/15 Transcript, at 20-21. This overestimation, combined with Neff's testimony regarding timing between the landmarks, results in a variation of approximately 20 miles per hour between the 80 miles per hour testified to by Neff and what the actual calculations shown. 3/9/15 Transcript, at 30. Further, Neff's claim is also in conflict with the NHTSA, as that federal

4

agency warns about making visual estimates at distances such as 2,000 feet due to the limitations of the human eye. 3/9/15 Transcript, at 93.

Second, Neff grossly underestimated the distance between signs warning drivers of the speed reduction, stating that the distance was between 50 and 100 feet, while the actual distance was 780 feet. 3/9/15 Transcript, at 35; 11/12/14 Transcript, at 43-44. Again, the discrepancy in the estimated distance and the actual distance is too large to be reasonable in that the actual distances dramatically alter the visual speed estimation. *See Sowards*, 690 F.3d at 589 (clear error for district court to find that officer's difficulty with measurements to be immaterial to his estimate of speed).

Finally, compounding the errors regarding distance, Sergeant Neff relied on his own count of time rather than using a stopwatch, as he was trained to in estimating speed. 11/12/14 Transcript, at 75. Neff acknowledged in testimony that it was recommended in training that he use a stopwatch in making visual estimations. *Id*. The failure to use a stopwatch thus contributes to the unreasonableness of Neff's visual estimation.

        ii. <u>Sergeant Neff's Use and Reliance on the Radar was Not Objectively Reasonable.</u>

Sergeant Neff testified of his extensive experience and training in radar devices utilized for speed enforcement by the Utah Highway Patrol. 11/12/14 Transcript, at 11-14. But, in the circumstances testified to in November, Neff actually relied on radar that was not fully checked to verify the accuracy of the calibration where he only used tuning forks, not the three tests required by the United States Department of Transportation and National Highway and Traffic Safety Administration regulations. 3/9/15 Transcript, at 42-43; 11/12/14 Transcript, at 23. Casting further doubt on the accuracy of the radar, Neff testified that although he tested the calibration of the radar with tuning forks at the beginning of his shift, he did not recall where this

5

was done, but believed it was in his driveway. 11/12/14 Transcript, at 24. The temperature outside on the date in question was approximately 40 degrees Fahrenheit at the time of the stop. Reasonable deduction would suggest that at the time Sergeant Neff started his shift, the outside temperature would be much colder, around 20 degrees Fahrenheit. As such, there is no evidence that the testing was performed in the requisite 70 degree Fahrenheit temperature or that Sergeant Neff made any correction for the low temperature. 3/9/15 Transcript, at 45.

Given Sergeant Neff's testimony regarding his training, experience, and proficiency in radar devices, it is unreasonable that Neff relied on equipment not checked in accordance with known standards to verify accuracy. *See* 3/9/15 Transcript, at 81. Further, not calibrating the radar for the temperature variation would have made any radar-reading suspect.

Neff also claims he relied on the GPS reported speed on his dash cam video when the video reveals there is a significant delay in getting the speed read out. 3/9/15 Transcript, at 61.

      iii. <u>Discrepancies in Sergeant Neff's Testimony and the Video Evidence Show that an Objectively Reasonable Officer Would Not Have Concluded Mr. Reed was Speeding.</u>

Further, the facts as presented regarding the video lead to questions regarding Neff's veracity. The expert testimony raised concerns that the video provided to defense counsel, and possibly the Court, was either edited or otherwise not an accurate depiction of the events. In particular, the Doppler audio tone testified to by Neff was not heard throughout the video, as would have been the case had the Doppler been properly utilized. *See* 3/9/15 Transcript, at 47-48, 55; 11/12/14 Transcript, at 87. Neff testified that the Doppler audio was only heard in the thirty seconds prior to the audio coming on in the video. 3/9/15 Transcript, at 87. But, the expert testified that the Doppler audio should have been audible throughout the events leading up to the stop. 3/9/15 Transcript, at 47-48. This suggests that either Neff did not in fact utilize the Doppler

6

or there was some unreported issue with the recording, such as purposeful editing.

Next, the video recording itself did not turn on until Neff's vehicle was travelling at 107 miles per hour but the video is reportedly supposed to be recovered from the dash cam hard drive to begin 30 seconds prior to automatically turning on at 100 miles per hour. *See* 3/9/15 Transcript at 49-50. This further supports the suspicion of purposeful editing. The video viewed by defense counsel is missing the thirty plus (30+) seconds that should be automatically retrieved from the dash cam hard drive. *See* 11/12/14 Transcript, at 51-52. The concern regarding the missing time is amplified by Sergeant Neff's statement on the record that although he had reviewed a version of the video prior to his testimony, he had not viewed the "particular video" submitted to the Court. *Id*. at 55. The missing time highly suggests that the video provided had been altered.

Neff also testified that his radar locked onto Mr. Reed's vehicle *before* the video comes on and it was during the unrecorded time that Neff clocked Mr. Reed going 75 miles per hour in a 65 miles per hour zone. 11/12/14 Transcript, at 88-89. However, the video comes on just prior to the speed reduction sign, so if Neff did indeed lock on Mr. Reed going 75 miles per hour just prior to the video coming on, then Mr. Reed was actually going the speed limit as he was still in the 75 miles per hour zone. 11/12/14 Transcript, at 88. Based on Neff's testimony alone, an objectively reasonable officer would not have understood the radar lock in the thirty seconds prior to a change in speed sign to accurately reflect someone's speed after the actual change in speed. In addition, Sergeant Neff's testimony did not indicate that he re-locked on Mr. Reed's vehicle after the radar would have been blocked by a hill located in between the two vehicles. 3/9/15 Transcript, at 55 ("a radar cannot go over a hill").

Given the totality of the circumstances recounted by Sergeant Neff, the mistakes of fact

made in estimating Mr. Reed's speed, attempting to verify that speed with radar, and how Sergeant Neff's testimony compares to the physical evidence, there are not objectively reasonable facts to support any detention of the defendant. As such, the traffic stop should be suppressed.

II. ALL EVIDENCE OBTAINED AS A RESULT OF THE INVALID STOP SHOULD BE SUPPRESSED.

The remedy for a Fourth Amendment violation is the invocation of the exclusionary rule to exclude unlawfully garnered evidence. *See United States v. Hill*, 60 F.3d 672, 677-78 (10th Cir. 1995) (the exclusionary rule applies where the unlawfully obtained evidence is used to prove an essential element of a charged offense). Pursuant to the Supreme Court case *United States v. Leon*, 468 U.S. 897, 918-20 (1984), evidence subject to exclusion for Fourth Amendment violation may be otherwise admissible if law enforcement acted in good faith.

But, the good faith exception to the exclusionary rule does not apply in this case because "[t]he Supreme Court, although expanding the good-faith exception's application a bit beyond the facts of *Leon*, has still limited that exception to circumstances where someone other than a police officer has made the mistaken determination that resulted in the Fourth Amendment violation." *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006). Here, Sergeant Neff made all of the mistaken determinations, as such, he can't claim he acted in "good faith." Further, Sergeant Neff's mistakes of fact are not objectively reasonable and thus should not satisfy the good faith exception to the exclusionary rule.

**Conclusion**

The stop of Mr. Reed's vehicle by Sergeant Neff violated the Fourth Amendment of the United States Constitution in that Sergeant Neff relied on several objectively unreasonable mistakes of fact. Further, Sergeant Neff's recollection of the facts leading to the conclusion that

Mr. Reed was speeding do not comport with the physical evidence, including the video of the stop received from the Utah Highway Patrol. Given that the stop was not valid, all evidence obtained should be suppressed.

RESPECTFULLY SUBMITTED this 24th day of March, 2015.

*/s/ Rudy J. Bautista*
RUDY BAUTISTA
Attorney for Defendant

CERTIFICATE OF SERVICE

On this 24th day of March, 2015, I delivered a true and correct copy of the foregoing by filing in the CM/ECF system to:

Vernon Stejskal
AUSA
185 South State Street, Ste. 400
Salt Lake City, UT 84111

*/s/ Julie Sorensen*